UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EVELYN PARHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 14-1706 (RJL) |
| ) | |
| CIH PROPERTIES, INC. et al., ) | |
| ) | **FILED** |
| Defendants. ) | DEC 09 2015 |
| | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

**MEMORANDUM OPINION**
December ___, 2015 [#23]

Plaintiff Evelyn Parham ("plaintiff") brings this suit against CIH Properties, Inc. and Dupont Park Apartments Joint Venture (together "defendants"), seeking damages based on allegations that her car was towed and never returned to her in violation of various federal and local laws. *See generally* Compl. [Dkt. #1-1]. Before this Court is defendants' Motion for Summary Judgment [Dkt. #23] ("Defs.' Mot."). Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, defendants' motion is GRANTED.

## BACKGROUND

For over thirty years, plaintiff has resided with her mother in an apartment at Banneker Place, an apartment complex owned and operated by defendants. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ¶¶ 1, 15 [Dkt. #24] ("Pl.'s Opp'n"); Defs.' Mot. 1. This case arises out of an incident on or before September 30, 2011 when plaintiff's car, a 1987

1

Mercedes bearing a D.C. handicap tag, was towed from the apartment complex parking lot. Pl.'s Opp'n ¶¶ 3, 5.

When plaintiff discovered that her car had been towed, she inquired with the rental office as to its location and was informed by Paula Jones, an employee of defendants, that the car had been removed by the D.C. Metropolitan Police Department ("MPD"). Pl.'s Opp'n ¶ 6. After receiving this information, plaintiff went to the police station to locate her car, but police records showed that MPD had not, in fact, taken possession of her car. Pl.'s Opp'n ¶ 7. Returning to the rental office, plaintiff learned from a different staff member, Carolyn Gill, what had actually transpired—the rental office had called a towing company to remove several cars from the apartment complex parking lot. Pl.'s Opp'n ¶ 8. Indeed, on September 29, 2011, Ms. Gill authorized a company called "Big Es Towing" to tow cars that had been ticketed for "dead tags" six days prior and to take them to the junkyard "to be crushed for scrap metal." *See* Defs.' Mot. Ex. 2 [Dkt. #23-2]. Citing a "dead tag" ticket issued for a Mercedes on September 23, 2011, defendants believe that one of the cars towed by Big Es Towing may have been plaintiff's car. Defs.' Mot. 2 & Ex. 1 [Dkt. #23-1]. Plaintiff, however, contends that her tags were up-to-date and that the tag number recorded on the ticket is inconsistent with the paper tag on her car at the time. Pl.'s Opp'n ¶ 16. Although the rental office staff provided plaintiff with the name and telephone number of the man who they believe towed her car, plaintiff has been unable to reach anyone at that number and does not know the location of the junkyard. Pl.'s Opp'n ¶ 10. Not surprisingly, plaintiff's car was never returned to her. Pl.'s Opp'n ¶ 11.

Just over three years after these events unfolded, plaintiff brought this action in the Superior Court for the District of Columbia seeking to recover the value of her car, treble damages pursuant to the D.C Consumer Protection Act, and punitive damages. *See* Compl. at 5. Defendants removed the action to this Court, Notice of Removal [Dkt. #1], and now move for summary judgment, *see* Defs.' Mot.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact to be decided with respect to any essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. *See id.* at 323-24. In evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmovant, giving it the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant's opposition, however, may not rest upon the mere allegations or denials of the pleadings, but must be supported by affidavits or other competent evidence. *Celotex*, 477 U.S. at 324. Thus, by pointing to the absence of evidence sufficient to establish the existence of an element essential to the nonmovant's case, a moving party may succeed on summary judgment. *Id.* at 325.

## ANALYSIS

Defendants move for summary judgment arguing that the record does not contain evidence sufficient to establish the essential elements of plaintiff's claims. *See generally* Defs.' Mot. I agree.

**A.  Breach of Contract**

Plaintiff's first cause of action is for breach of contract. *See* Compl. ¶¶ 24-25. She supports her claim, however, not with affidavits or competent evidence, but mere allegations that because she was a life-long tenant of Banneker Place, defendants "breached the contract" when they towed her car "out of [the] private parking lot without justifiable reason." Pl.'s Opp'n ¶ 15. Such arguments are too slender a reed upon which to base a property claim of this genre. As defendants point out, plaintiff has utterly failed to provide any competent evidence that a contract existed between defendants and herself. *See* Defs.' Mot. 2. Indeed, the only potentially relevant contract now before this Court is a 1972 lease agreement signed by Mr. Franklin E. Parham, which explicitly states that parking is *not* covered by the agreement: "Lesee agrees that parking accommodations are not included in the rental, nor are parking accommodations to be furnished to the Lesee unless a separate express agreement in writing with respect thereto is made between Lessor and Lesee." Defs.' Reply in Supp. of Mot. for Summ. J. ("Defs.' Reply") Ex. 1 at 1 [Dkt. #25-1].[1]

---

[1] Although plaintiff's contract claim must be dismissed, defendants' additional assertion—that the towing of plaintiff's car was "in compliance with D.C. law," Defs.' Mot. 2—is equally unsupported. Defendants admit that on September 29, 2011, they authorized Big Es Towing to tow *and crush for scrap metal* four cars that were ticketed for "dead tags" six days earlier. Defs.' Mot. 2 & Ex. 2. However, under D.C. law, a vehicle left on private property that does not

4

**B.     Fraudulent Misrepresentation**

Plaintiff next lodges a claim of fraudulent misrepresentation. Compl. ¶ 26. To defeat defendant's motion for summary judgment on this claim, plaintiff must point to competent evidence as to each of the elements of fraudulent misrepresentation: "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive, (5) with action taken in reliance upon the representation." *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980). In addition, plaintiff must show that she suffered some injury as a consequence of her reliance on the misrepresentation. *Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998). Unfortunately for plaintiff, she has not done so here.

To support her claim for fraudulent misrepresentation, plaintiff simply states that "[d]efendant knowingly made inconsistent and false statements concerning who towed the car and where the car was," and that these misrepresentations caused her to "ran [sic] around to locate her car." Pl.'s Opp'n ¶ 18. Specifically, plaintiff claims that Ms. Jones incorrectly informed her that her car had been towed by MPD. Pl.'s Opp'n ¶ 6.

---

display valid tags is only considered "abandoned" after it has been there for *more than 30 days* and when it is extensively damaged, apparently inoperable, or houses pests. *See* D.C. Code 50-2421.02(1). Moreover, such vehicles may be towed by the D.C. government or a towing company acting at the direction of the Department of Public Works, but only 45 days after a warning notice is issued. D.C. Code 50-2421.05(3). The Court is not aware of any law authorizing a private property owner to have another person's car towed and scrapped just six days after it has been ticketed for "dead tags." Defendants would do well in the future to read the law more carefully so as to avoid leaving the Court with the impression that they intentionally mischaracterized the law to justify their actions.

5

Unfortunately for plaintiff, she has not put forward sufficient evidence to establish that this statement is actionable as a fraudulent misrepresentation.

While Ms. Jones' statement that it was MPD who towed plaintiff's car satisfies the first element as an "affirmative misrepresentation," plaintiff has not demonstrated that Ms. Jones knew this statement was false or that she made it with the intent to deceive. Indeed, it was Ms. Gill who authorized the towing of cars from the apartment complex, not Ms. Jones, and plaintiff has not pointed to any evidence suggesting that Ms. Jones was aware that Ms. Gill had taken such action. But even if Ms. Jones was aware, plaintiff has also failed to demonstrate that her reliance on this statement—which entailed traveling to the police station only to learn they did not have her car—resulted in the type of injury that would make a misrepresentation actionable. To succeed on a claim of fraudulent misrepresentation, plaintiff must prove that that her reliance on defendants' misstatement caused her substantial pecuniary loss. *See Day v. Avery*, 548 F.2d 1018, 1029 (D.C. Cir. 1976) (per curiam) ("[A] sine qua non of any recovery for misrepresentation is a showing of pecuniary loss proximately caused by reliance on the misrepresentation."); *see also id.* ("[S]ince the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise." (quoting W. Prosser, Law of Torts § 110 at 731 (4th ed. 1971))). The inconvenience of a trip to the local police station simply does not meet this requirement.[2]

---

[2] Plaintiff also suggests that the rental office's withholding the specific name of the towing company and the location of her car amounts to fraudulent misrepresentation. Pl.'s Opp'n ¶¶ 8,

6

C.   **D.C. Consumer Protection Procedures Act**

Plaintiff also seeks relief for defendants' alleged "misrepresentations" under the D.C. Consumer Protection Procedures Act ("CPPA"). *See* Compl. ¶¶ 27-28; Pl.'s Opp'n ¶ 21; D.C. Code § 28-3904(e) ("It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: . . . (e) misrepresent as to a material fact which has a tendency to mislead."). The CPPA authorizes consumers to bring suits against merchants who employ trade practices that violate District of Columbia law. *Id.* § 28-3905(k)(1)(A). A "consumer" for purposes of the CPPA is "a person who . . . does or would purchase, lease (as lessee), or receive consumer goods or services." *Id.* § 28-3901(a)(2). A "trade practice" is "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of

---

10, 18, 20; *see Rothenberg v. Aero Mayflower Transit Co., Inc.*, 495 F. Supp. 399, 406 (D.D.C. 1980) ("A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen."). As a preliminary matter, plaintiff has presented no evidence that defendants knew the location of her car, yet failed to reveal that information to her. As to the specific name of the towing company, even assuming that Ms. Gill had a duty to disclose this fact, for an omission to be actionable it must be material and plaintiff must have relied on it. In the context of this case, the towing company's name does not strike this Court as material. *See Nader v. Allegheny Airlines, Inc.*, 445 F. Supp. 168, 174 (D.D.C. 1978), *rev'd*, 626 F.2d 1031 (D.C. Cir. 1980) ("A material fact is one to which a reasonable person might attach importance in choosing his course of action."). Plaintiff was provided specific information regarding the name of the man who towed her car and his telephone number, Pl.'s Opp'n ¶ 10, and has not alleged that knowing the company's name would have aided the search for her car in any way. More importantly though, plaintiff has failed to make a showing of intent to deceive—it does not stand to reason that defendants would take responsibility for having the car towed, affirmatively provide the name and phone number for the man who actuated the tow, all the while intending to mislead plaintiff by refusing to reveal the specific name of the towing company.

consumer goods or services." *Id.* § 28-3901(a)(6). These definitions make clear that the CPPA simply does not cover the dispute in this case.

As a preliminary matter, it is not at all clear that the CPPA even applies to landlord-tenant relations. Although the CPPA is, "'to say the least, an ambitious piece of legislation, with broad remedial purposes,' it is not clear from its plain language that the statutory scheme, designed to protect consumers, applies to [landlord-tenant relations]." *Twin Towers Plaza Tenants Ass'n, Inc. v. Capitol Park Assocs., L.P.*, 894 A.2d 1113, 1120 (D.C. 2006) (quoting *DeBerry v. First Gov't Mortg. & Inv'rs Corp.*, 743 A.2d 699, 700 (D.C. 1999) (internal quotations omitted)). While the Court of Appeals for the District of Columbia has held that a prior version of the CPPA did *not* create a private right of action for tenants to sue their landlords, *Childs v. Purll*, 882 A.2d 227, 237-38 (D.C. 2005), it has declined to consider whether the statute, as revised in October 2000, does, *id.* (declining to decide "whether the Council intended . . . to expand the private right of action" to cover landlord-tenant relations); *see also Twin Towers Plaza*, 894 A.2d at 1120.[3] I also do not need to reach this broader question because, even assuming landlord-tenant relations are covered generally, it is clear that the CPPA does not reach the specific facts of this case. While it may be true that the rental office initially made a false statement to plaintiff regarding the location of her car, to be actionable under the

---

[3] At least one of my colleagues in this District has found that the statute, even as revised, fails to reach the landlord-tenant context. *See Feemster v. BSA Ltd. P'ship*, 471 F. Supp. 2d 87, 103-06 (D.D.C. 2007) *aff'd in part, rev'd in part*, 548 F.3d 1063 (D.C. Cir. 2008) (holding that the plain language of the CPPA makes clear that allowing a tenant to sue his or her landlord under the CPPA "would be an inappropriate back door expansion of the range of remedies expressly made available to tenants in landlord tenant matters").

8

CPPA, plaintiff would need to show that this misrepresentation was a "trade practice" as defined by the statute. *See* D.C. Code 28-3905(k)(1)(A). This she cannot do. The statement was simply not made to "make available" or to "provide information about" "a sale, lease or transfer, of consumer goods or services." *Id.* § 28-3901(a)(6).

**D. Americans with Disabilities Act**

Finally, plaintiff claims that defendants violated the reasonable accommodation requirement of the Americans with Disabilities Act ("ADA") by having her car, which displayed a handicap tag, towed. *See* Compl. ¶¶ 30-32; Pl.'s Opp'n ¶¶ 23-26. Unfortunately for plaintiff, the ADA is not applicable in this case. Title III of the ADA—the provision relevant to plaintiff's failure to accommodate claim—prohibits discrimination in any "place of public accommodation," 42 U.S.C. § 12182(a), which is defined to include, *inter alia*, "an inn, hotel, motel, or other place of lodging." 42 U.S.C. § 12181(7)(A). I have previously found, as have a number of courts, that private apartment complexes do not qualify as "public accommodations" for purposes of the ADA. *Parham v. CIH Properties, Inc.*, Civ. No. 14-1613 (RJL), 2015 WL 5294683, at *3 (D.D.C. Sept. 6, 2015) (Leon, J.).

Even assuming, however, that plaintiff had alleged her reasonable accommodation claim under an applicable antidiscrimination law, she has still failed to point to any evidence that defendants refused to reasonably accommodate her disability. Similar to the ADA, the Fair Housing Act ("FHA") and D.C. Human Rights Act ("DCHRA")

9

require reasonable accommodations to be made for persons with disabilities.[4] These statutes, moreover, are generally interpreted to be coextensive with regards to the requirement to reasonably accommodate. *See, e.g., Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003) (observing that the elements of a failure to reasonably accommodate claim are the same under the ADA and the FHA); *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) (interpreting the language of the DCHRA consistent with interpretations of federal antidiscrimination laws). Thus, to succeed on a failure to accommodate claim under any one of these statutes, plaintiff must show: (1) that she had a handicap within the meaning of the statute; (2) that defendants knew or reasonably should have known of the handicap; (3) that an accommodation may be necessary to afford her an equal opportunity to use and enjoy the dwelling; and (4) that defendants refused to make the requested accommodation. *United States v. District of Columbia*, 538 F. Supp. 2d 211, 217-18 (D.D.C. 2008). As these elements suggest, the "underlying assumption of any reasonable accommodation claim is that the plaintiff . . . has requested an accommodation which the defendant . . . has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).

Simply put, plaintiff has not proffered any competent evidence to prove any one of these elements. *See Celotex*, 477 U.S. at 324 (finding that mere allegations are not

---

[4] The FHA makes housing discrimination unlawful, *see* 42 U.S.C. § 3604(f)(1)-(2), and provides that "discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C. § 3604(f)(3)(B). The DCHRA prohibits landlords from discriminating against persons with disabilities and includes in its definition of "unlawful discrimination" a "refusal to make reasonable accommodations" for disabled tenants. D.C. Code § 2-1402.21(d).

sufficient to defeat a motion for summary judgment). Plaintiff's bare claims that she "suffered from a few car accidents and was then disabled from working" and that she has a "handicap tag in her car since 1998" are not sufficient to demonstrate that she has a "disability" as specifically defined by the relevant statutes and that defendants were, or should have been, aware of that disability. Pl.'s Opp'n ¶ 24. Moreover, plaintiff has failed to demonstrate that she made a request for a reasonable accommodation that defendants denied. Her last-minute claims that she has "for years" sent written requests to defendants for a first-floor apartment and "easy access parking space" do not suffice. Pl.'s Opp'n ¶ 27.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge